IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TOSOH CORPORATION, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> DENTAL DIREKT GMBH, § <br> § <br> *Defendant*. § <br> § | CIVIL ACTION NO. 2:24-cv-00138-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Dental Direkt GmbH's ("Defendant") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion"). (Dkt. No. 21.) Having considered the Motion and related briefing, the Court finds that the Motion should be **DENIED**.

**I.    BACKGROUND**

Plaintiff Tosoh Corporation ("Plaintiff") filed suit on February 26, 2024. (Dkt. No. 1.) Plaintiff alleges that Defendant infringes four United States patents. (*E.g.*, Dkt. No. 9 ¶ 11.) Plaintiff asserts that certain of Defendant's zirconia products infringe the asserted patents. (*Id.* ¶ 14.) Defendant is a German company with its principal place of business in Germany. (Dkt. No. 21 at 1.) Defendant moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (*See generally* Dkt. No. 21.)

**II.    LEGAL STANDARD**

"Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant." *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 476 (E.D. Tex. 2019). Where a claim involves substantive questions of patent law, the Court applies Federal Circuit law to evaluate personal jurisdiction. *NexLearn, LLC v. Allen*

*Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017). However, the Fifth Circuit relies on the same analysis as the Federal Circuit in deciding whether personal jurisdiction exists. *Packless Metal Hose, Inc. v. Extek Energy Equip. (Zhejiang) Co.*, 2011 WL 504048, at *1 n.1 (E.D. Tex. Feb. 10, 2011).

Personal jurisdiction exists over a defendant where a forum state's long-arm statute permits service of process and where assertion of personal jurisdiction does not violate due process. *NexLearn*, 859 F.3d at 1375. Due to Texas's long-arm statute being "coextensive with the Due Process Clause of the Fourteenth Amendment, the two inquiries merge." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). To satisfy due process, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff bears the burden to show that the defendant has minimum contacts with the forum under the first two prongs. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). Upon a showing of minimum contacts, the defendant bears the burden to prove unreasonableness. *Id.* In rare circumstances, a defendant may defeat the exercise of personal jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The minimum contacts test is satisfied if a defendant "delivers its products into the stream

of commerce with the expectation that they will be purchased by consumers in the forum state." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)). The existence of an "established distribution channel into the forum" is a "significant factor" when evaluating the strength of a non-movant's stream of commerce theory. *See id.* at 1565 n.15. The Supreme Court has, however, introduced a split of authority as to what is required to establish minimum contacts under a stream of commerce theory. The Federal Circuit has repeatedly refused to endorse either articulation of the stream of commerce theory. *See, e.g., id.* at 1566 ("We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing."); *see also AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012) ("Thus, *Beverly Hills Fan* counsels that we refrain from taking a position on the proper articulation of the stream-of-commerce theory where the facts of a particular case mandate exercising or declining to exercise personal jurisdiction under any articulation of that theory."). Instead, the Federal Circuit's approach is to determine whether the plaintiff can establish minimum contacts—or has failed to establish minimum contacts—under both theories, making the choice between theories unnecessary. *AFTG-TG*, 689 F.3d at 1364. The Federal Circuit has explained that defendants fall under the stream of commerce theory where "defendants, *acting in consort*, placed the accused [product] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan*, 21 F.3d at 1566 (emphasis added).

"When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only

3

a prima facie burden." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). "To make that showing, [the plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the Defendants." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). "Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id.*

### III. DISCUSSION

#### A. Defendant has Sufficient Minimum Contacts with Texas[1]

Defendant asserts that the Court lacks specific jurisdiction because Defendant does not purposefully direct any activities at Texas. (Dkt. No. 21 at 8-9.) Defendant argues that Plaintiff's "conclusory allegations" that Defendant "plays some part in placing accused products in the stream of commerce in Texas" and that Defendant directly or indirectly sells or distributes the accused products throughout Texas are insufficient. (*Id.* at 9-10.) In support of its Motion, Defendant attached a declaration from Marcel Brüggert, Defendant's Chief Executive Officer (the "Brüggert Declaration"). (Dkt. No. 21-1.) The Brüggert Declaration states, *inter alia*, that Defendant "does not directly sell, offer to sell, or ship any products to Texas nor does it conduct marketing or advertising in, or directed toward, Texas." (*Id.* ¶ 4.)

Plaintiff responds that contrary to Defendant's representations and the Brüggert Declaration, jurisdictional discovery revealed that Defendant regularly shipped the accused products to one of its distribution partners—Henry Schein Dallas—in Texas. (Dkt. No. 41 at 7-8.)

---

[1] Here, general jurisdiction is not at issue. Therefore, the Court's analysis is limited to whether Defendant is subject to specific jurisdiction in Texas. Further, Plaintiff represents that it "does not assert Rule 4(k)(2) as a basis for jurisdiction in this District." (Dkt. No. 41 at 17.) Thus, the Court's analysis does not address Rule 4(k)(2).

4

Plaintiff asserts that between 2017 and 2021, Defendant knowingly and intentionally "shipped 51 orders, containing 3,587" accused products, to Henry Schein Dallas in Grapevine, Texas. (*Id.* at 8-10; Dkt. No. 41-4.) Plaintiff also responds that the Court has personal jurisdiction over Defendant because Defendant "sells its products through a distribution channel it established with VITA and Henry Schein, with knowledge that, through such distribution, the Accused Instrumentalities would be sold nationwide, including Texas." (*Id.* at 11-13)

The Court finds that Plaintiff has made a *prima facie* showing of specific jurisdiction in Texas. Plaintiff's Corrected First Amended Complaint alleges that "Defendant—directly or through intermediaries including distributors, retailers, and others—sells, offers for sale, distributes, advertises, and markets products, yttria-stabilized zirconia products that infringe the Asserted Patents, throughout Texas and this Judicial District." (Dkt. No. 9 ¶ 8.) Plaintiff further alleges that "Defendant acts in concert with others to purposefully and voluntarily place the infringing products in a distribution chain that foreseeably leads to infringing products being offered for sale, sold, and used in Texas and this Judicial District as part of the ordinary stream of commerce." (*Id.* ¶ 9.) This is not the case where Defendant merely sells the accused products to a third-party distributor who then sells the accused products in Texas. In direct contradiction to the Brüggert Declaration, jurisdictional discovery revealed that Defendant has directly imported the accused products to Texas itself.[2] (Dkt. No. 41-4 (invoices that identify "Grapevine, Texas" as the shipping address).) Specifically, Defendant purposefully shipped 51 orders of accused products to Texas, fully expecting, or at least could have reasonably foreseen, that its products would then be sold in Texas as a result of its activities. *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1350 (Fed. Cir. 2016). Thus, it can be said that Defendant's actions are purposefully directed to Texas,

---

[2] Given the false statements in the Brüggert Declaration, the Court disregarded it in its entirety. The Court will determine at a later date whether sanctions under Federal Rule of Civil Procedure 37 are appropriate.

indicating an intent and purpose to serve not only the U.S. market generally, but also the Texas market specifically.

Further, there is evidence that Defendant's distribution channel—at least VITA and Henry Schein Dallas—is arranged in a way that Defendant "knew, or reasonably could have foreseen, that a termination point of the channel" was Texas. *Beverly Hills*, 21 F.3d at 1564. Defendant entered an agreement with VITA in December 2022 wherein it provided VITA the accused products to sell to customers in the United States. (*See* Dkt. No. 41-5.) Therefore, under this agreement, Defendant knew that its products would be sold across the United States and presumably in Texas.

Accordingly, Defendant's active participation in directly and indirectly supplying and shipping the accused products to Texas constitutes sufficient minimum contacts with Texas for personal jurisdiction.

### B. Plaintiff's Claims Arise from or Relate to Defendant's Texas Contacts

Defendant argues that Plaintiff's claims do not arise out of or relate to Defendant's Texas contacts because Defendant does not direct any activities at Texas. (Dkt. No. 21 at 10-13.) Plaintiff's infringement claims arise from Defendant "design[ing], manufactur[ing], import[ing], market[ing], distribut[ing], promot[ing], [selling], offer[ing] for sale and/or import[ing] infringing certain zirconia products in the United States and/or ha[ving] caused such products to be sold in the United States." (Dkt. No. 9 ¶ 19; *see also, e.g., id.* ¶¶ 20-23.) Defendant, directly or indirectly, places the accused products into the stream of commerce throughout the United States, including Texas. Further, evidence shows that Defendant shipped instruction manuals with the accused products to VITA and Henry Schein Dallas in the United States, including in Texas.

Accordingly, Plaintiff's claims for patent infringement arise from or relate to Defendant's contacts with Texas.

### C.     The Exercise of Jurisdiction is Reasonable and Fair

To evaluate whether the exercise of personal jurisdiction is reasonable and fair, the Court weighs five factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies. *Patent Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (citing *Burger King*, 471 U.S. at 476-77). "When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Nuance*, 626 F.3d at 1231 (citing *Burger King*, 471 U.S. at 477).

Under the first fact, Defendant argues that requiring Defendant to litigate in Texas would be unreasonable because Defendant "does not conduct business in Texas and maintains its headquarters and principal places of business thousands of miles away in Germany." (Dkt. No. 21 at 13-14.) As to the remaining factors, Defendant argues that Texas has no interest in resolving the present dispute because both parties are foreign entities with no Texas ties. (*Id.* at 13-14.) Defendant also contends that exercising jurisdiction would not result in efficiency and no interest would be served because Plaintiff's claims are not viable. (*Id.*)

The Court finds that while Defendant may be slightly burdened by defending in a foreign forum, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Synthes*, 563 F.3d at 1299 (citing *World-Wide Volkswagen*, 444 U.S. at 294). However, the second, third, and fourth factors favor jurisdiction because both Texas and the United States have an interest in enforcing federal patent laws and providing Plaintiff a forum to efficiently pursue its claims for patent infringement and for the parties to efficiently

7

resolve their disputes. *See id.* ("The United States also has an interest in discouraging injuries that occur within its boundaries, including injuries resulting from patent infringement."). As to the fifth factor, the United States and Texas have an interest in furthering their social policies to discourage patent infringement.

Accordingly, the Court finds that the exercise of personal jurisdiction over Defendant is both reasonable and fair.

## IV.    CONCLUSION

Having considered the Motion, the Court finds that it should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 24th day of July, 2025.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE