[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**(MARSHALL DIVISION)**

| | |
|---|---|
| TOSOH CORPORATION<br><br>Plaintiff,<br><br>vs.<br><br>DENTAL DIREKT GMBH<br><br>Defendant. | Civil Action No. 2:24-CV-00138-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF TOSOH CORPORATION'S**
**MOTION TO COMPEL DISCOVERY FROM DEFENDANTS**

[redacted]

## I. INTRODUCTION

Plaintiff Tosoh Corporation ("**Tosoh**") respectfully files this motion to compel technical discovery from Defendant as to the Defendant's yttria-stabilized zirconia products sold in the United States.[1] There are over 400 individual products at issue in this case. The Asserted Claims include claim elements concerning, *inter alia*, the product's composition, density, flexural strength, light transmission, crystal grain size, etc. These and other characteristics are known to Defendant for each of its products as evidenced by FDA submissions and public representations, yet the underlying data has not been produced. In order to mitigate the difficulties caused by Defendant's failure to produce the requested testing data, Tosoh requested physical samples of the products, which it agreed to pay for at Defendant's cost. This would permit Tosoh to perform any testing not otherwise disclosed in Defendant's files. Yet, more than two months after the products were requested, Defendant has not produced even one physical product.

Further complicating the already difficult situation caused by the foregoing failures, on October 23, 2025, Defendant identified sales of a previously unidentified set of products—the D29 Products. This was not a trivial oversight. On the contrary, the D29 Products constitute [redacted] These products should have been disclosed in response to Plaintiff's first set of interrogatories, served in February 2025. Despite this failure, Defendant is unwilling or unable to provide a date certain when full discovery will be provided for these products. The current fact discovery deadline is January 12, 2026. (ECF No. 30). While the Defendant has indicated its willingness to join in a motion to amend the DCO, without some degree

---

[1] This includes the Accused Instrumentalities and, as will be explained, a previously undisclosed product line that is not advertised and instead are custom products sold through private, non-public sales. As such, even the existence of these products was completely unknowable absent Defendant's disclosure.

[redacted]

of certainty when full discovery will be provided, it is unclear how much additional time will be needed.

Defendant's failures prevent Tosoh from meeting its infringement proofs. Tosoh respectfully requests that Defendant be compelled to provide full and complete discovery as to each of the yttria-stabilized zirconia products it has sold in the United States during the relevant time period.

## II. BACKGROUND

On June 4, 2024, Tosoh filed its Complaint against Defendant alleging infringement of United States Patent Nos. 9,249,056 (the "'056 Patent") and 9,309,157 (the "'157 Patent). (Dkt. No. 1). On June 3, 2024, Tosoh filed the First Amended Complaint, which added allegations of infringement of United States Patent Nos. 9,737,383 (the "'383 Patent") and 11,548,825 (the "'825 Patent). (Dkt. No. 6). A Corrected First Amended Complaint was filed on June 18, 2024, to correct an error in the case caption. (Dkt. No. 9).

Although the particular claim elements vary by patent, Claim 1 of the '383 Patent (ECF No. 9-18) is representative of the issues presented in this motion:

> 1. A translucent zirconia sintered body containing more than
>
> 4.0 mol % and at most 6.5 mol % of yttria and less than 0.1 wt % of alumina, and having
>
> a relative density of at least 99.82%,
>
> a total light transmittance of at least 37% and less than 40% to light with a wavelength of 600 nm at a thickness of 1.0 mm,
>
> a crystal grain size of from 0.3 to 1.0 µm, and
>
> a bending strength of at least 500 MPa.

## III. ARGUMENT

Rule 26 broadly allows a party to obtain discovery regarding any subject relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1); L.R. 26(d). The party resisting discovery

[redacted]

must show specifically how each discovery request is not relevant or how each request is overly broad, burdensome, or oppressive. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990). The requested discovery is highly relevant and material as it is necessary for Tosoh's infringement proofs. Dental Direkt provides no basis to deny the relevance of Tosoh's requested information and cannot carry out its burden to make a specific showing that any of the requests are overly broad, burdensome, or otherwise not proportional to the needs of this case.

### A. Defendant's Deficient Responses To Interrogatory No. 4 and RFP Nos. 1, 4 and 9

On February 26, 2025, Tosoh served its first set of interrogatories (nos. 1-9) and requests for production (nos. 1-19). Interrogatory no. 1 requested:

> For each yttria-stabilized zirconia product that has been made, used, sold, offered for sale, and/or imported into the United States by Defendant or on Defendant's behalf, including but not limited to the Accused Instrumentalities, provide the product name, part number(s), model number(s), version number(s), and all internal names and designations, state the date that each such product was first made, used, sold, offered for sale and imported into the United States, and if no longer sold, state when it was removed from sale.

Interrogatory no. 4 requested all measured and/or determined claimed physical characteristics of the subject products:

> For each yttria-stabilized zirconia product identified in response to Interrogatory No. 1, provide all measured and/or determined physical characteristics of the calcined body product as sold and of the resulting sintered product, such physical characteristics including, inter alia, the number of layers, density, crystal grain diameter (measured size range), lightness L* in a L*a*b* color system, light transmittance as measured at a sample thickness of 1 mm and with a D65 light source, total light transmittance of light with a wavelength of 600 nm at a thickness of 1.0 mm, monoclinic phase transformation depth after immersion in water of 140°C for 24 – 72 hours, monoclinic fraction after immersion in water of 140°C for 24 hours, three-point bending strength, warp measured using a thickness gauge according to JIS B 7524:2008.

[redacted]

RFP no. 1 requested:

> For each Yttria-Stabilized Zirconia Product, all documents relating to the design, making use, manufacture, testing, quality control, marketing, sales, offers for sale, promotion, distribution, and/or importation into the United States.

RFP no. 4 requested documents relating to measured and/or determined physical characteristics of the product as sold and of the resulting sintered product. RFP no. 9 requested all documents relating to any regulatory filings for each yttria-stabilized zirconia product sold by Defendant, including, but not limited to, documents submitted to and received from the FDA.

Tosoh was diligent in reviewing the documents received and complaining of the deficiencies in Dental Direkt's responses. The parties engaged in a protracted series of letters and conferences concerning same. Each time, Defendant gave its assurances that the deficiencies would be corrected. Defendant made piecemeal supplemental productions on June 5, June 16, June 20, July 9, September 10, October 22, October 23, and October 31. Dental Direkt has never provided a substantive response to Interrogatory no. 4.

Dental Direkt **has not** affirmatively represented that it does not have the requested documents and information. There is a good reason for this. The Accused Instrumentalities are FDA-regulated medical devices. To obtain FDA approval, Dental Direkt [redacted] ISO 13485 (Ex. 1), which defines the documents that must be maintained and how they are to be maintained for a regulated medical device. (*See, e.g.*, https://13485store.com/iso-13485-requirements/iso-13485-documentation-requirements/). As is readily discernable from the foregoing link, ISO 13485 requires Dental Direkt to keep and maintain nearly every document that is created from the pre-design stage through commercialization, including all testing that has been performed on the product. [redacted] there is no legitimate reason why it cannot immediately produce all requested documents in an

[redacted]

intelligible manner.[2] Dental Direkt is also required to maintain its manufacturing and quality assurance documents, which are responsive to RFP. no 1. Yet, Defendant has not produced any responsive manufacturing documents. Tosoh requests Defendant be compelled to produce complete copies of the responsive files for each of its products, in the manner in which they are kept in the ordinary course of business, including the files [redacted] under ISO 13485.

**B. Defendant's Failure to Produce Physical Samples (RFP Nos. 20 & 21)**

Tosoh's ability to make its case is further frustrated by Dental Direkt's repeated delay in producing physical samples of each yttria-stabilized zirconia product sold by Defendant. On September 3, 2025, Tosoh served requests for the production of "unopened, new commercial units, labeled and approved for sale in the United States, of each of the products" Dental Direkt has sold in the United States (RFP nos. 20 and 21).

It has been **72 days** since Tosoh requested the physical samples, and to date, **Tosoh has not received a single product**. In fact, despite repeated assurances that **some** products have been shipped, but delayed in transit, Defendant has refused to respond to repeated requests for a list of which products have been shipped. Thus, it is unclear if or when Defendant will produce all of the requested samples. Defendant's delay in producing the samples further obstructs Tosoh's ability to conduct testing that it requires for its proofs of infringement. The products are responsive to RFP nos. 20 and 21. (Ex. 5). There is no legitimate reason why Defendant has not produced

---

[2] Dental Direkt has also [redacted] (Ex. 2). In order to certify the disclosed characteristics (*e.g.*, density, flexural strength, etc.), there must be underlying testing data. Defendant also makes representations in marketing materials and product literature concerning the physical characteristics of its products. (Ex. 3). Again, there must be underlying tests, which are also responsive to Interrogatory no. 4 and RFP no. 4.

[redacted]

any physical products, much less all of the products. Tosoh requests the Court compel Defendant to produce samples of all of the products encompassed by RFP nos. 20 and 21.

### C. The D29 Products

Defendant's April 11, 2025 response to Interrogatory no. 1 identified ten product lines: DD Bio ZW iso, DD Bio ZW iso color, DD Bio $ZX^2$, DD Bio $ZX^2$ color, DD cube ONE, DD cube ONE ML, DD cubeX, DD cube$X^2$ ML, Nacera Pearl Natural, DD cubeY HL. Tosoh was already aware of two additional lines (*i.e.,* Nacera Pearl 1, and Nacera Pearl Shaded), which it identified in its infringement contentions. Thus, there were 12 product lines known to Tosoh throughout the course of discovery. Now, at a time when discovery should be wrapping up, Defendant has disclosed a separate and distinct product line that was not identified in Defendant's original and/or supplemental responses to Interrogatory no. 1. Tosoh's Interrogatory no. 7 requested, *inter alia*, monthly sales (units and revenue) for **each of the products** identified in response to Interrogatory no. 1. Defendant, however, only provided sales data on a product-line level. After repeated requests, on October 23, 2025, Defendant produced a spreadsheet that provided the sales (units and revenue) on an individual product level. From this data, Tosoh learned for the first time of the previously unidentified D29 Products. Defendant's failure to disclose these products in the responses to Interrogatory no. 1 is a material omission. The D29 Products constitute [redacted]

On October 27, 2025, Tosoh asked Defendant about the products and why they were not included in Defendant's responses to Interrogatory no. 1. Having not received any response, Tosoh wrote again on November 4, 2025. The parties met and conferred on November 7 and 12, 2025. As of November 12, Defendant was unable to confirm if and when all discovery responses would

[redacted]

be supplemented and refused to provide a date certain by which all responsive documents concerning the D29 Products would be produced.

Tosoh did not know about these products because Defendant failed to disclose them in its responses to Interrogatory no. 1. Defendant has now explained that the D29 Products are unique custom products that are privately sold to a single customer. Thus, the existence of these products is not publicly knowable. It is still unknown exactly how Defendant's customer uses the D29 Products, but it appears that, while nonetheless covered by the Asserted Patents, these products constitute a different sales channel than the other 400-plus products, which are primarily sold to disk resellers/distributors. This necessarily means that a different market analysis will apply, resulting in the need for an entirely different and distinct damages model for the D29 Products.

Tosoh has been tremendously disadvantaged by Defendant's failure to timely disclose the existence of these products. Tosoh is entitled to full discovery. This includes compelling Defendant to supplement each of Tosoh's discovery requests, including each applicable Interrogatory and RFP. Defendant has indicated it will join Tosoh's request to amend the DCO as necessary. However, until Defendant is compelled to produce all responsive discovery concerning the D29 Products it is unclear how much additional time is required. Tosoh requests the Court compel Defendant to timely supplement all prior written discovery responses and produce documents responsive to all prior RFPs to include all responsive information and documents concerning the D29 Products and physical samples of each D29 Product.

## IV. CONCLUSION

For the foregoing reasons, Tosoh respectfully requests its motion be granted.

[redacted]

Dated: November 14, 2025

Respectfully submitted,

*/s/ Marc R. Labgold*
MARC R. LABGOLD (admitted)
*mlabgold@labgoldlaw.com*
PATRICK J. HOEFFNER (*pro hac vice*)
*phoeffner@labgoldlaw.com*
MEGAN C. LABGOLD (*pro hac vice*)
*megan@labgoldlaw.com*
**LABGOLD LAW**
1900 Reston Metro Plaza, Suite 600
Reston, Virginia 20190
Direct: 703-901-8860
Main: 877-401-8855
Facsimile: 877-401-8855

MELISSA R. SMITH (Texas State Bar No. 24001351)
*melissa@gillamsmithlaw.com*
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903.934.8450
Facsimile: 903.934.9257

***Counsel for Plaintiff Tosoh Corporation***

[redacted]

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that lead and local counsel for Tosoh met and conferred with lead and local counsel for Defendant to discuss the substantive relief sought in this Motion in accordance with Local Rule CV-7(h). No agreement was reached during the meet and confer. Thus, the parties have reached an impasse that necessitates the filing of this opposed motion.

/s/ *Marc R. Labgold*
Marc R. Labgold

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 14th day of November 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, and all counsel of record will receive an electronic copy via electronic mail.

/s/ *Melissa R. Smith*
Melissa R. Smith

[redacted]